USCA1 Opinion

 

 February 24, 1995 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  ____________________ No. 94-1448 IN RE WYNCO DISTRIBUTORS, INC.,  __________ HENRY B. WYNN AND ALBERT WYNN, Appellants, v. JOSEPH BRAUNSTEIN, TRUSTEE IN BANKRUPTCY OF WYNCO DISTRIBUTORS, INC. Appellee.  ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Joseph L. Tauro, U.S. District Judge] ___________________  ____________________ Torruella, Chief Judge, ___________ Bownes, Senior Circuit Judge, ____________________ and and Cyr, Circuit Judge. _____________  ____________________ Richard H. Wynn for appellant Albert Wynn. _______________ Henry B. Wynn on brief pro se.  _____________ Charles R. Bennett, Jr., with whom Isaac H. Peres and Riemer & _______________________ _______________ _________ Braunstein were on brief for appellee. __________  ____________________  ____________________ Per Curiam. Appellants challenge a bankruptcy court Per Curiam. __________ order, affirmed on intermediate appeal to the district court, authorizing the chapter 11 trustee to sell substantially all the corporate debtor's assets. As appellants neither alleged nor established cognizable injury from the challenged order, we affirm the district court judgment. The present litigation has survived the demise of Wynco Distributors, Inc. ("Wynco" or "debtor"), a corporation once closely held by the Wynn family. Paul, Henry, Albert and Irene Wynn were beneficiaries of the Wynn Family Trust [hereinafter: "Family Trust"], the sole shareholder in Wynco. Paul and Irene Wynn served on the Wynco board of directors. Paul, Henry and Albert Wynn were the designated trustees of the Family Trust. Paul alone was authorized to vote Family Trust shares in matters affecting Wynco. On December 17, 1990, Henry and Albert Wynn, appellants in the present action, unsuccessfully brought suit in a Massachusetts court to relieve Paul Wynn as a trustee, for alleged mental incompetence. Nevertheless, ten days after the state superior court ruled against them, Henry and Albert pur- portedly removed Paul as a trustee and installed themselves as officers and directors of Wynco.1 In response, Paul and Irene  ____________________ 1Ultimately, the superior court concluded that Henry and Albert Wynn had no authority to displace Paul as a trustee and that Paul possessed the requisite authority under Massachusetts law to initiate these chapter 11 proceedings in behalf of Wynco. Wynn v. Wynn, No. 90-03357 (Mass. Super. Ct. 1990). The Massa- ____ ____ chusetts Appeals Court affirmed in Wynn v. Wynn, No. 93-P-29 ____ ____ (Mass. App. Ct. 1994). 2 Wynn promptly filed a chapter 11 petition in behalf of Wynco in the United States Bankruptcy Court for the District of Massachusetts. Henry and Albert correctly point out on appeal that they challenged the Wynco chapter 11 petition in the bankruptcy court, based on their allegations that Paul was incompetent.2 They also insist, however, that Paul's alleged incompetency was fraudulently concealed from the bankruptcy court. We can accord no weight to the latter contention in light of the fact that the bankruptcy court though by appellants' own admission well aware of their allegations of incompetency elected to defer to the state court on the matter. See supra p. 2. There can have ___ _____ been no actual concealment of Paul's alleged incompetency from the bankruptcy court, which was apprised of the allegations and appropriately elected to defer to the state court. The sole remaining issue, to which we now turn, is whether appellants alleged or established any cognizable injury resulting from the challenged sale. Eleven months after the chapter 11 petition was filed, no reorganization plan having been submitted, the chapter 11 trustee proposed to sell the Wynco  ____________________ 2The record reflects that the matter of Paul's competency was raised at a bankruptcy court hearing on the debtor's motion to restrain and enjoin appellants from operating Wynco; in appel- lants' motion for leave to appeal the bankruptcy court's denial of their motion to dismiss the chapter 11 petition; and in appel- lants' district court appeal from the bankruptcy court order authorizing the sale of Wynco's assets. Significantly, though not surprisingly in light of the record below, no allegations of fraud on the court were ever raised by appellants prior to their _____ __ ___ _____ appeal to the district court from the bankruptcy court order approving the sale of assets. 3 business as a going concern, together with substantially all its assets, to Susan Wynn, Paul Wynn's daughter, for $100,000.3 The trustee projected that the $100,000 in cash generated from the sale to Susan Wynn, together with $164,000 in cash already on hand and the anticipated proceeds from $210,000 in accounts receivable retained by the debtor estate, would enable all Wynco creditors and costs of administration (a combined total of $395,000) to be satisfied in full. Any surplus was to be re- tained to cover the costs of defending against appellants' challenges to the order of sale. Appellants advanced four arguments in support of their opposition to the sale. First, the sale would be premature, as the state court had not yet decided who was entitled to control Wynco. Second, the purchaser was an insider. Third, the pur- chaser chilled the sale, deflating the purchase price. Fourth, the proposed sale would contravene chapter 11 by permitting a sale of going-concern assets without the protections afforded by a disclosure statement or a plan of reorganization. See Bank- ___ ruptcy Code 1106, 1121-25, 11 U.S.C. 1106, 1121-25 (1993). The bankruptcy court rejected these contentions for the following reasons. First, the case had been pending longer than most bankruptcy cases, and awaiting a state court decision would necessitate further, indefinite delay. Second, the purchaser's  ____________________ 3The appraised value was between $69,000 and $86,500. Excluded from the sale were Wynco accounts receivable predating the October 1, 1991 sale agreement, approximating $210,000 in face amount, which were to be collected for the benefit of the debtor estate either by the buyer or the trustee. 4 "insider" status had been fully disclosed. Third, appellants failed to present competent evidence (or to pursue discovery) in support of their allegation that the purchaser chilled the sale. Fourth, the court found that the chapter 11 trustee had complied with Bankruptcy Code 1106, 11 U.S.C. 1106.4 Undeterred, appellants reiterate their contentions that the chapter 11 proceedings amounted to a fraud on the bankruptcy court because Paul Wynn was incompetent to initiate the chapter 11 proceedings and his incompetency was concealed from the bankruptcy court by Paul's attorneys and by Susan Wynn, the purchaser. As noted above, see supra p. 3, their ostensible ___ _____ concern for the integrity of the chapter 11 proceedings rings hollow. Furthermore, appellants neither point to error in the _____ bankruptcy court rulings relating to the order of sale, see supra ___ _____ pp. 4-5, nor allege any cognizable injury sustained as a conse- quence of the order of sale. Finally, absent any developed argumentation as to appellate standing, whatever potential harm might conceivably be visited upon appellants as minority Wynco shareholders is too speculative to support the required showing that appellants are "aggrieved parties." See In re El San Juan ___ _________________ Hotel, 809 F.2d 151, 154 (1st Cir. 1987). _____  ____________________ 4In the latter regard, the court found that it was in the best interests of creditors to continue to operate Wynco pending sale, in order to capitalize on its going-concern value, rather than suspend business operations and liquidate the remnants under chapter 7. Moreover, the court concluded that the trustee fulfilled his responsibility under Bankruptcy Code 1106(5), 11 U.S.C. 1106(5), by indicating his intention to convert the proceedings to chapter 7 upon consummation of the sale. 5 The district court judgment is affirmed; costs to _______________________________________________________ appellee.  ________ 6